ALEXANDER v. KANSAS CITY, FT. SCOTT & MEMPHIS R. R. Co., *Appellant.*

Division Two, April 3, 1897.

1. **Railroad:** RIGHT OF WAY: PUBLIC LANDS: PRIOR HOMESTEAD ENTRY. Where a railroad company, in compliance with requirements of act of Congress of March 3, 1875, granting a right of way through public lands, filed its articles of incorporation and map of definite location, crossing the land in dispute, with the Secretary of the Interior, both of which were approved; purchased from a homesteader in possession under the homestead act right of way over the land in dispute, which land was not described in map as vacant land because of the possession of the homesteader; and proceeded to construct its road along the right of way described in the map of definite location, the title of the railroad company to the right of way over this land is valid so far as the government and its subsequent grantees are concerned, and is in no way affected by the fact that the homesteader in possession at the time of the purchase failed to perfect the title to his land.

2. ——: ——: EJECTMENT: ESTOPPEL. Where it is shown that plaintiff knew, at the time of his entry, that a railroad ran across his land; that he lived on the land ten years before bringing suit; that he requested the defendant company to erect fences along the right of way; and that the company had put in a crossing in front of his house for his convenience, he is estopped from bringing an action of ejectment.

*Appeal from Howell Circuit Court.*

REVERSED.

*Wallace Pratt, Olden & Orr,* and *I. P. Dana* for appellant.

(1) As between plaintiff and defendant, the latter made the first lawful entry upon the land in question and obtained the first right thereto, and has held it continuously since. This is so whether defendant's rights rest upon the transfer from the homesteader Simpson, or upon a compliance with the act of Congress of March 3, 1875. R. S. U. S. 1878, sec. 2288, 2290, 2291; Sup. to same, p. 187; *Kinion v. Railroad,* 118 Mo. 582; *Hargis v. Railroad,* 100 *Id.* 210; *Railroad v. Osborne,* 21 Pac. Rep. 421; *Wright v. Gish,* 94 Mo. 110; *Railroad v. Peronto,* 10 A. & E. R. R. Cases, 670; *Cahalan v. McTague,* 46 Fed. Rep. 251; *Railroad v. Gordon,* 41 Mich. 420. (2) Plaintiff made his homestead entry on the half quarter section of land with the railroad on it; knowing it was there and knowing, or with the means and power of learning, just how and what defendant's claim and rights were, he therefore took the land subject to the railroad right of way. *Hargis v. Railroad,* 100 Mo. 210; *Shumate v. Reavis,* 49 *Id.* 336; *Fellows v. Wise,* 55 *Id.* 413; *Reilly v. Railroad,* 94 *Id.* 608; *Eyerman v. Bank,* 84 *Id.* 408; *Kanaga v. Railroad,* 76 *Id.* 213; *Hughes v. U. S.,* 4 Wall. 232; *Gray v. Railroad,* 81 Mo. 134; *Bradley v. Railroad,* 91 *Id.* 499; *Dodd v. Railroad,* 108 *Id.* 581.

*James Orchard* for respondent.

GANTT, P. J.—This is an action of ejectment in statutory form for the west half of the northwest quar-

ter of section 21, township 26, range 9, in Howell county, Missouri. Ouster was laid on May 6, 1886. Action commenced October 9, 1891.

The answer admitted possession of a strip one hundred feet wide over and across said land amounting to four and sixty-five hundredths acres, and disclaimed ownership and possession of the remainder of said lands. It then proceeded to aver that in May, 1881, its predecessor the Kansas City, Springfield & Memphis Railroad Company under and by virtue of its charter and the act of Congress of March 3, 1875, granting right of way for railroads, entered upon and took possession of said strip of land, surveyed, located and constructed its railroad thereon, and filed its map showing such definite location as was required by said act of Congress, which map was approved June 17, 1882; that said predecessor company continuously owned and operated said railroad and remained in possession of said strip until April, 1888, when by consolidation it was merged in the defendant company, to which all of its property and franchises were duly transferred, and that the latter company had ever since continued such occupation, ownership and operation.

The answer also pleaded an equitable estoppel against the maintenance by plaintiff of the action of ejectment for said strip of land, and set forth the facts on which this defense was based. The answer also contained a general denial of the allegations of the petition not specifically admitted.

The reply was a general denial, and the case was tried without a jury.

The testimony and admissions of the parties showed the following state of facts:

Prior to April, 1881, the Kansas City, Springfield & Memphis Railroad Company was duly incorporated

under the laws of Missouri, its charter authorizing it to construct a railroad from Springfield in a southeasterly direction to the Arkansas line in Linn township, Oregon county, all in Missouri. In April and May, 1881, the company made a preliminary survey for the road through and across the land described in the petition (the west half of the northwest quarter of section 21, township 26, north, range 9, west), and made a definite location of the line through said land in August, 1881, when the right of way was staked out to the width of one hundred feet through this and other lands. The railroad company went on at once, and continuously thereafter, to construct the railroad, and it was completed through said land during that fall and winter, so that in January, 1882, trains were running to West Plains.

The railroad company, in compliance with the terms of the act of Congress of March 3, 1875, granting right of way through public lands to railroads, filed its articles of incorporation with, *and the same were approved by, the Secretary of the Interior on February 15, 1882, and its map of definite location crossing the lands sued for was approved June 17, 1882,* but this land was not described on said map as being vacant.

At the time this survey was made across said land one C. W. Simpson was living upon it and an adjoining eighty acre tract, having, by entry dated December 17, 1877, homesteaded said west half of the quarter section above described, and also the southeast quarter of the southeast quarter of section 17, and the northeast quarter of the northeast quarter of section 20, in the same township and range. The railroad was surveyed and constructed across this land with the knowledge and consent of Simpson, who was paid by the railroad company for the right of way, and gave it a deed for a portion thereof. Subsequently, but just

when the evidence does not show, Simpson left the land which he had homesteaded, the plaintiff Alexander having, as the latter states, bought Simpson's claim, and in March, 1884, Simpson's homestead entry was formally canceled in the United States land office.

In September, 1881, plaintiff Alexander went to live with Simpson on the land homesteaded by the latter, and continued there—part of the time with Simpson, and by himself after the latter had left the land— *working from time to time on the construction of the railroad, both before and after moving upon the land. After Simpson's homestead entry was canceled in March, 1884, plaintiff Alexander himself made a homestead entry of the same one hundred and sixty acres of land.*

Alexander, the plaintiff, did not testify in his own behalf, but was put upon the stand by the defendant. He testified that the railroad was being constructed when he went on the land and was completed while he lived there—he thought in 1881, although he worked on the road afterward; Simpson then lived on the land, and he, Alexander, bought the former's claim; that he had lived on the land ever since, having made a homestead entry thereof in March, 1884, and final proof in November, 1889, and afterward obtained a patent; that he had notified the railroad company two or three times to fence its right of way through his land, but the fence had not yet been built; that at his request the company had put in a crossing in the tracks in front of his house for his convenience. He further said: "I want *pay for the damage they have done to this land; that is all I want. I am satisfied with the railroad there, but I want pay for my land.*"

The Kansas City, Springfield & Memphis Railroad Company maintained and operated the railroad so constructed by it over said land continuously from 1881 until April, 1888, when it transferred to the defendant

company, appellant herein, all its rights, privileges, and franchises, and the defendant succeeded to all the rights, privileges, property, and franchises of the first named company, and has ever since maintained and operated said railroad through said land, as a part of its line of road.   About $10,000 per mile was expended in building the road, and the defendant and its predecessor has constantly ever since the original construction maintained and operated the same.

There was some evidence introduced by the plaintiff over defendant's objection, on the subject of the value of the land used for right of way, but as the judgment did not include any allowance for rents, profits or occupation, the error was harmless.  A plat showing the location of the railroad across this land homesteaded by Simpson and afterward by Alexander, was introduced in evidence.

The plaintiff asked no declaration of law; the court refused each of those asked by the defendant and gave none itself.

On these pleadings and this evidence the court found that plaintiff was entitled to the immediate possession of the strip of land one hundred feet wide occupied by defendant for right of way for its railroad over and across the land described in the petition; that defendant was wrongfully in possession of such land, and that plaintiff should have restitution thereof; and judgment was entered accordingly.   Motions for a new trial and in arrest were duly filed and overruled, and defendant perfected its appeal to this court.

1.   While the facts of this case somewhat resemble those shown in *Kinion v. Railroad*, 118 Mo. 577, they differ greatly in some essential points.   In that case Kinion entered upon the land in February, 1881, prior to the making of the preliminary survey by the railroad company in April, 1881, and made his homestead entry

in January, 1882, before the articles of the incorporation of the company were approved by the Secretary of the Interior and before the approval of the map of definite location in June, 1882. In this case it will be observed that when the company came to locate its road on this land one Simpson was living on the land under a homestead entry of December 17, 1877. With Simpson's consent the company entered and paid him for the right to construct its road. Simpson's right to the land was that of possession with the right to obtain title by continued occupation and improvement under the homestead law. If he perfected his right he was entitled to a patent. If he failed it reverted to the United States. In compliance with the act of Congress of March 3, 1875, granting right of way to railroads, the defendant company filed its articles of incorporation with the Secretary of the Interior, and they were approved February 15, 1882, and its map of definite location crossing the land sued for was also approved June 17, 1882. The land in suit was not described on the map of definite location as vacant or government land, for the reason that Simpson was in possession under his entry as a homesteader. The United States retained the legal title in this land subject to the right of Simpson to obtain the title thereto by complying with the homestead law. By the act of Congress of March 3, 1875, the Congress granted to defendant a right of way through any lands belonging to the United States upon filing the articles of incorporation and map of definite location and having the same approved, but Congress had in view the peculiar circumstances of this case. It considered that it might occur that some settler might have entered upon some tract through which this railroad was projected and might not have perfected his title under the homestead law. With a view to the protection of his inchoate right it permitted

him to grant a right of way to such railroad company while withholding that privilege as to any other grantee of such homestead (section 2288, Revised Statutes of the United States 1878), or if such homesteader refused to agree upon compensation for right of way the act of 1875 allowed a condemnation of his interest.  Act of March 3, 1875, sec. 3, supplement to U. S. R. S. 1874 to 1891, p. 91.  The defendant company acquired a right of way of Simpson, entered and built its road, but Simpson never perfected his title to the homestead and never obtained his patent, but abandoned the land, according to the weight of the evidence, some time in 1882 after the company had built its railroad, and was operating it as a part of a great interstate system between Kansas City, Missouri, and Birmingham, Alabama.  What now was the position of defendant? When it sought to obtain its right of way it was precluded from describing this land as vacant because of the possession of Simpson, a homesteader with an inchoate right.  It was directed by the government to deal with this homestead tenant for a right of way through his equitable estate.  This it did and purchased a right through the inchoate homestead.  Is it to be told now, when the homestead tenant's right fails, that the act of Congress did not operate to grant the right of way over this land to which the United States held the title, and the title to which never passed out of the government?  We think not.  We think that the United States by the act of March 3, 1875, must be held to have donated all its interest in the right of way upon the approval of the articles of incorporation and map of definite location, subject to the contingency of the homestead tenant perfecting his title, and if he failed to do so, immediately upon his abandonment, a perfect title accrued to the railroad company as against the United States, *and as against*

*any person who had not then a possessory right thereto.*
It can not affect the defendant's rights as to plaintiff
that it did not describe this land as vacant.    The map
showed that the railroad was located over this identical
land, and plaintiff had been on this land employed and
aiding in building defendant's railroad thereon.    He,
of all men, could not be ignorant of the location of the
road·and of the claim of defendant.    After Simpson's
homestead entry was canceled in March, 1884, this
plaintiff made a homestead entry of this land with full
knowledge of the construction and operation of the
railroad thereon.    It can not be doubted that at some.
time before plaintiff's entry of his homestead thereon
this was *public land* upon which the act of Congress
would operate, and at that time the articles of incor-
poration of defendant company and its map of definite
location were then approved, and on file in the office of
the Interior department.    To so construe the act of
1875, *supra*, with reference to such a condition of affairs
as to hold that the railroad company must be punished
by losing the money it paid Simpson, the homesteader,
at the invitation of Congress, and be subjected to pay
plaintiff, another homesteader, for the same right, and
so on, *ad infinitum*, as often as they failed to comply
with the law, would, in our opinion, be a total miscon-
struction of the act of 1875, its intention and purposes.
Up to the time plaintiff filed his homestead entry in
1884 he was a mere trespasser on these lands.    He
could acquire as against the United States no rights by
his pretended purchase from Simpson.    He had no
lawful possession upon which the defendant company
could trespass.

We hold that when Simpson abandoned his home-
stead the lands became disburdened of his homestead
claim, and the title of defendant to its right of way
became at once perfect so far as the United States was

concerned, by relation to the approval of the articles of incorporation and the profile map, and was not thereafter subject to sale, and the United States and all grantees therefrom with notice of the location and possession of the road, were estopped from claiming any title therein. It is a case of first impression, and we have endeavored to construe the act of 1875 so as to effectuate the purpose of Congress.

2. But if we should be wrong in our interpretation of the federal statute, that the legal estate vested in the defendant company upon the failure of Simpson to perfect his title to said homestead, there is still an insuperable barrier to plaintiff's right of recovery in ejectment. It would be hard to conceive of a stronger estoppel than the facts raised against plaintiff. He declined to testify in his own behalf but was called by defendant and testified that he assisted the defendant in constructing this railroad through this land. He knew the defendant had expended large sums of money in building and equipping its road and that this was a necessary link in its important line; when he made his entry he knew the road ran through the land. He had lived on the land for nearly ten years before he brought this suit and nearly seven after he made his entry upon it under the homestead act. He requested the company to erect fences along the right of way. He asked to have cattle guards put in and had the company put a crossing in the track in front of his house for his convenience. There was evidence, moreover, that he lived with Simpson when the road was being graded through the tract and attempted, by buying out Simpson's right, to get the land and there was enough evidence to charge him with notice of defendant's purchase of the right of way from Simpson under whom he obtained possession. He has stood by without an intimation that he proposed to

oust defendant for nearly ten years. He has waited until the public has acquired an interest in the operation of this great highway without one word of objection. Under such circumstances he is estopped from bringing an action of ejectment. *Provolt v. Railroad*, 57 Mo. 256; *Gray v. Railroad*, 81 Mo. 126; *McClellan v. Railroad*, 103 Mo. 295; *Kanaga v. Railroad*, 76 Mo. 207; *Scarritt v. Railroad*, 127 Mo. 298.

The instructions presented this phase of the case and were all refused. In view, however, of the conclusion reached that plaintiff can not recover the right of way by ejectment because he has no title to it, and if he ever had would now be estopped from such a remedy, the judgment is simply reversed.

SHERWOOD and BURGESS, JJ., concur.