LAURA F. McMICHAEL, WALTER S. McMICHAEL, LILLIAN M. McMICHAEL, *adults,* AND LULA F. McMICHAEL, JAMES W. McMICHAEL, EFFIE L. McMICHAEL, WILLIAM F. McMICHAEL, MAUD McMICHAEL AND BERTHA McMICHAEL, *Minors, heirs at law of William T. McMichael, Deceased, by their next friend,* LAURA F. McMICHAEL v. SAMUEL MURPHY *et al.*

(Filed September 2, 1902.)

1. HOMESTEAD ENTRY—Law Governing. A homestead entry, valid upon its face, constitutes such an appropriation and withdrawal of the land as to segregate it from the public domain, and precludes it from subsequent homestead entry or settlement until the original entry is canceled or declared forfeited; in which case the land reverts to the government as a part of the public domain, and becomes again subject to entry under the land laws of the United States.

2. TRESPASSER ON LAND COVERED BY HOMESTEAD ENTRY— What Constitutes. One who makes settlement on a tract of land while it is covered by the homestead entry of another is a mere intruder, a naked, unlawful trespasser; and no right either in law or equity can be founded thereon.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*Clark & Bryan,* for plaintiffs in error.

*J. H. Everest,* for defendants in error.

### STATEMENT OF FACTS.

The material facts in this case are undisputed, and are substantially as follows: On April 23, 1889, Ewers White made homestead entry number six on the southwest quarter of section twenty-seven, township twelve north, range three, west, at the United States land office at Guthrie, Oklahoma. On April 24, 1889, Charley J. Blanchard made homestead application for the same tract of land. On May 1, 1889 Vestal S. Cook made application for the same tract of land. The applications of Blanchard and Cook were rejected, because of conflict with White's entry. On April 27, 1889, Blanchard filed an affidavit of contest, charging that White had entered the Territory of Oklahoma prior to twelve o'clock, noon, April 22, 1889, in violation of the act of congress approved March 2, 1889, and the president's proclamation issued pursuant thereto. On May 1, 1889, Cook also filed an affidavit of contest, attacking White's entry, alleging that he was disqualified to enter said lands, and also alleging that Blanchard was disqualified from entering said lands, for the reason that he had entered upon said lands prior to twelve o'clock, noon, April 22, 1889, in violation of the federal law. On July 16, 1889, the cause was tried before the local land office, and the register and receiver of said office recommended the cancellation of White's entry, and dismissed the contests of both Blanchard and Cook. All parties appealed from this decis-

ion to the commissioner of the general land office. And on March 7, 1890, the decision of the local land office was affirmed. From this decision an appeal was taken to the secretary of the interior. On November 29, 1890, while the cause was pending before the secretary of the interior, White relinquished his homestead entry, and the defendant, Samuel Murphy, entered said tract of land. And on July 21, 1891, the secretary of the interior affirmed the decision of the commissioner of the general land office. · (*Blanchard v. White et al.* 13 L. D. 66.)

On or about June 3, 1889, while White's homestead entry was still intact, the plaintiff in error, William T. Mc-Michael, entered upon said tract of land, with the view of establishing his residence thereon, and initiating a homestead right to said land. On July 21, 1889, he made application to the local land office to enter said tract of land, tendering the fees prescribed by law, which application was rejected by the local land office, for being in conflict with White's entry. No appeal was taken from the rejection of this application to the commissioner of the general land office. On August 31, 1889, McMichael again appeared before the local land office and tendered his application, together with the fees to enter said tract of land as a homestead. This application, it appears, was received by the local land officers, and was suspended pending the final decision of the contest of White, Blanchard and Cook. On the same day, to-wit: August 31, 1889, McMichael, the plaintiff in error, filed a contest or protest, alleging that he had made settlement on the land on June 3, 1889, and had lived thereon in a tent with his family until August 2, 1889, when he was ejected therefrom by the military at the instance of White, and that

McMichael *et al.* v. Murphy *et al.*

his rights were superior to those of White, Blanchard and Cook, all of whom were disqualified by reason of having entered the territory during the period prohibited by law; that he made the application to enter said tract on June 3, which was rejected because it conflicted with White's entry; that he was the only qualified settler on the tract entitled to make entry thereof, and he protested against any other person being permitted to enter said land.

On February 15, 1892, a hearing was had before the land office between the plaintiff in error, McMichael, and the defendant in error, Murphy. The local land office decided the case in favor of Murphy and against McMichael, and the latter appealed to the general land office. On January 18, 1893, the commissioner of the general land office affirmed the decision of the local office. From that decision McMichael appealed to the secretary of the interior. And on February 25, 1895, the secretary of the interior affirmed the decision of the commissioner of the general land office. The facts are clearly and fully stated by the secretary of the interior in *McMichael v. Murphy et al.* 20 L. D. 147.

A patent having been issued by the United States to Murphy for said land, this action was brought in the district court of Oklahoma county by the plaintiff in error, William T. McMichael, against Samuel Murphy, defendant in error, and his grantees to declare a resulting trust, and that the defendants be decreed to hold the legal title to the land in trust for the use and benefit of the plaintiff in error. To the plaintiff's petition the defendants interposed a demurrer, on the ground that said petition did not state facts sufficient to constitute a cause of action; the plaintiff's claim being that

the secretary of the interior has misconstrued and misapplied the law. The district court sustained the demurrer to the petition. And thereupon, the plaintiff having elected to stand upon said petition, the court dismissed the plaintiff's cause of action. From which decree of dismissal the plaintiff in error brought the cause here for review. Since the cause has been filed in this court the plaintiff in error, William T. McMichael, died, and at this term of court the cause has been revived in the name of his legal heirs.

Opinion of the court by

HAINER, J.: It was contended before the land tribunal as it is here, by the plaintiff in error, that the homestead entry of White was absolutely void, and, therefore, McMichael had a lawful right to enter upon said land and make settlement thereon, and that he acquired an inceptive right as a homestead claimant by virtue of such settlement, notwithstanding the fact that White's entry was still of record. The secretary of the interior held that the homestead entry of White was not void, but voidable, and while it remained of record the land was segregated from subsequent entry or settlement. And this has been the uniform ruling of the land tribunal. In *McMichael v. Murphy et al* 20 L. D. 147, the secretary of the interior in passing upon this question uses the following language:

"McMichael urges strenuously that White's entry was void, and asks a specific ruling upon that proposition. Although White entered the Oklahoma country during the prohibited period, yet his homestead entry was *prima facie* valid. Its invalidity had to be established by extraneous evidence, and a judgment as to its illegality pronounced by a competent tribunal. Had that never been done, the tract covered by said

entry would have remained forever segregated from the public domain; so far, at least, as the unquestioned legality of the entry itself could have accomplished that fact. Hence it cannot be regarded as void, but voidable only."

The supreme court of the United States has held that a homestead entry, valid upon its face, constitutes such an appropriation and withdrawal of the land as to segregate it from the public domain, and precludes it from subsequent homestead entry or settlement, until the original entry is canceled or declared forfeited; in which case the land reverts to the government as a part of the public domain, and becomes again subject to entry under the land laws of the United States. And this doctrine has been announced in such a number and variety of cases by our court of last resort that it may now be regarded as one of the fundamental principles underlying the land system of this country. (*Chotard v. Pope,* 12 Wheaton 586; *Wilcox v. Jackson,* 13 Peter, 498; *Carroll v. Stafford,* 3 Howard, 441; *Witherspoon v. Duncan,* 4 Wall, 210; *Pacific R. R. Co. v. Dunmeyer,* 113 U. S. 629; *Hastings & Dakota R. R. Co. v. Whitney,* 132 U. S. 357; *Sturr· v. Beck,* 133 U. S. 541; *Sioux City & Iowa Falls v. Griffey,* 143 U. S. 40; *Whitney v. Taylor,* 158 U. S. 85.)

As early as 1827 Mr. Justice Washington, in delivering the opinion of the court in *Chotard v. Pope,* defines the word entry as applied to the appropriation of public lands as follows:

"It means that act by which an individual acquires an inceptive right to a portion of the unappropriated soil of the country, by filing his claim in the office of an officer known in the legislation of several states by the epithet of an entry-taker, and corresponding very much in his functions with the registers of land offices, under the acts of the United States."

In *Wilcox v. Jackson* it was held that whenever a tract of land has been legally appropriated to any purpose from that moment it becomes severed from the mass of public lands, and that no subsequent law will be construed to embrace it or operate upon it, and that the validity and effect of the appropriation did not depend upon it being subjected afterwards to cancellation because of the omission of some particular duty of the party claiming its benefit.

In *Witherspoon v. Duncan* the court held in accordance with the decision in *Carroll v. Safford,* that lands originally public cease to be public after they have been entered at the land office, and the certificate of entry has been obtained. And the court further held that this applies as well to homestead and pre-emption as to cash entries. In either case the entry being made and the certificate being executed and delivered, the particular tract entered thereby becomes segregated from the mass of public lands, and takes the character of private property. And the fact that such an entry may not be confirmed by the land office on account of any alleged defect therein, or may be canceled or declared forfeited on account of non-compliance with the law, or even declared void after patent has issued on account of fraud in a direct proceeding for that purpose in the courts, is an incident inherent in all entries of the public lands.

In *Hastings & Dakota R. Co. v. Whitney,* it was declared that the almost uniform practice of the department has been to regard land upon which an entry of record, valid upon its face, has been made, as appropriated and withdrawn from subsequent homestead entry, pre-emption, settlement, sale or grant until the original entry be canceled, or be de-

clared forfeited; in which case the land reverts to the government as a part of the public domain, and becomes again subject to entry under the land laws. And it was further held that whatever defects there might be in an entry so long as it remained a subsisting entry of record, whose legality had been passed upon by the land authorities, and their action remains unreversed, it is such an appropriation of the tract as segregates it from the public domain and therefore precludes it from a subsequent grant by congress. In this case it was contended, as it is here, that the homestead entry was absolutely void, and that no rights could be acquired by virtue of said entry, and, therefore, an inceptive right could be acquired while the homestead entry remains uncanceled of record. The district court in the state of Minnesota held accordingly. The cause was thereupon appealed to the supreme court of that state, and the decision of the district court was reversed, the supreme court of Minnesota holding that the entry was not void, but merely voidable, and therefore, the homestead entry while it remained of record segregated the tract from a subsequent grant or appropriation. (*Hastings & Dakota R. Co. v. Whitney,* 34 Min. 538, 27 N. W. 69). The cause was thereupon appealed to the supreme court of the United States, and the decision of the supreme court of Minnesota was affirmed. Mr. Justice Lamar, in discussing what constitutes an entry and appropriation of land, said:

"Under the homestead law, three things are needed to be done in order to constitute an entry on public lands; first, the applicant must make an affidavit setting forth the facts which entitle him to make such an entry; second, he must make a formal application; and, third, he must make payment of the money required. When these three requisites are complied with, and the certificate of entry is executed and de-

livered to him, the entry is made—the land is entered. If either one of these integral parts of an entry is defective, that is, if the affidavit be insufficient in its showing, or if the application itself is informal, or if the payment is not made in actual cash the register and receiver are justified in rejecting the application. But, if, notwithstanding these defects, the application is allowed by the land officers, and a certificate of entry is delivered to the applicant, and the entry is made of record, such entry may be afterwards canceled on account of those defects by the commissioner, or on appeal by the secretary of the interior; or, as is often the practice, the entry may be suspended, a hearing ordered, and the party notified to show by supplemental proof a full compliance with the requirements of the department; and on failure to do so the entry may then be canceled. But these defects, whether they be of form or substance, by no means render the entry absolutely a nullity."

In *Sturr v. Beck* and *Sioux City & Iowa Falls Lot and Land Co. v. Griffey,* the same doctrine was reaffirmed and applied.

In *Whitney v. Taylor,* it was declared that an existing claim on the records of the local land office by an individual under the homestead law which has been recognized by the government officers and not canceled or set aside excepts the tract from a subsequent grant, although such claim may not be enforceable by the claimant, and is subject to cancellation by the government.

Counsel for plaintiff in error cite the case of *Calhoun v Violet,* 173 U. S. 60, in support of their contention. In this case the court held that since Calhoun had entered the territory during the prohibited period, that his homestead entry was void; and the ruling of the land department was upheld. In this case the question of what constitutes a void or void-

able entry did not arise, and we do not think that the supreme court of the United States intended in any wise to modify the well settled doctrine of that court that a homestead entry, valid upon its face, constitutes such an appropriation and withdrawal of the land as to segregate it from the public domain, and precluded it from subsequent homestead entry or settlement until the original entry is canceled or declared forfeited.

The distinction between a void and voidable act is clearly and tersely stated by Mr. Chief Justice Fuller in *Weeks v. Bridgman,* 159 U. S. 540, as follows:

"It is rarely that things are wholly void and without force and effect as to all persons and for all purposes, and incapable of being made otherwise. Things are voidable which are valid and effectual until they are avoided by some act; while things are often said to be void which are without validity until confirmed."

Applying these decisions, which this court must regard as final and authoritative, to the case at bar, it follows that White's homestead entry was *prima facie* valid; that its invalidity had to be determined by a competent tribunal and that tribunal was the land department of the United States, and so long as White's entry remained uncanceled of record, it segregated the tract of land from the mass of the public domain and precluded McMichael from acquiring an inceptive right thereto by virtue of his alleged settlement. McMichael having entered upon the land more than thirty days after White had made his homestead entry, he could not be regarded as a prior settler thereon. He was a mere intruder, a naked, unlawful trespasser; and no right, either in law or equity can be founded thereon. Being a mere trespasser,

White had the undoubted right to eject him from said land. McMichael being a mere intruder and a trespasser, he is precluded from saying that he was deprived of any right by reason of his ejectment by the military at the instance of White. And in this connection this court will take judicial knowledge of the fact that Oklahoma was opened to settlement on April 22, 1889; that the organic act of Oklahoma went into effect on May 2, 1890; that the congress of the United States by virtue of said organic act put in force the laws of the state of Nebraska until after the adjournment of the first session of the legislative assembly of said territory; and that from April 22, 1889, until the organic act of Oklahoma went into effect there was no law in Oklahoma territory to redress any wrongs affecting persons or property. This court will presume that Captain B. F. Stiles, who was in command of the military forces in Oklahoma City at that time, acted rightfully, and for the purpose of preserving the public peace. It appears that there were five contestants besides McMichael for this particular tract of land. There was Blanchard, Cook, Fuller, Renfro, Holt and McMichael. If McMichael had a right to enter upon the tract of land more than thirty days after the land was segregated from the public domain by White's entry, then the other contestants had equally the same right to enter upon the land. The inevitable result of so many clashing interests and conflicting claims would result in violence and even bloodshed.

Manifestly it is against the policy of the law to permit any one to acquire an inceptive right by any alleged settlement after the land has once been segregated from the public domain and while the original entry remains of record. And as said by Miller, J., in *Atherton v. Fowler*, 96 U. S. 519: "It

indeed would have shocked the moral sense of the framers of the beneficient homestead laws, if the land tribunal or the courts would hold that a person could acquire an inchoate right to any portion of the public domain by trespass, by force, by violence, and by acts and conduct which are calculated to lead to homicide and other crimes of less moral turpitude." It follows that McMichael acquired no right whatever by his unwarranted intrusion or trespass upon the possesssory rights of White; and that his status in this case is that of a mere unsuccessful contestant seeking to obtain a preference right by virtue of his contest or protest. And being a mere unsuccessful contestant he has no vested interest in said land, and, therefore, neither he nor his heirs can maintain this action. (*Parker v. Lynch,* 7 Okla. 631; and cases there cited.)

We therefore hold that the petition did not state facts sufficient to constitute a cause of action, and the demurrer was properly sustained. The judgment of the district court of Oklahoma county was right, and it is, therefore, affirmed.

Burwell, J., having presided in the court below, not sitting; Beauchamp, J., absent; all the other Justices concurring.