Hon. JNO. H. BURFORD, Chief Justice.
Hon. BAYARD T. HAINER,
Hon. BENJ. F. BURWELL,
Hon. CLINTON F. IRWIN,
Hon. FRANK E. GILLETTE,  } Associate Justices.
Hon. J. L. PANCOAST,
Hon. M. C. GARBER,

---

Enid & Anadarko Railway Company, a Corporation, v. James A. Kephart.

(Filed September 6, 1906.)

(91 Pac. 1049.)

1.  PUBLIC LANDS—Grant in Aid of Railroads—Right of Way—Homestead Entry. A railroad company appropriating land for its right of way across a tract of land covered by the homestead entry of another becomes an unlawful trespasser and obtains no right either in law or equity to the land.

2.  SAME. A homestead entry, valid upon its face, constitutes such an appropriation and withdrawal of the land as to segregate it; from the public domain, and precludes it from subsequent appropriation for right of way for railroad purposes under the

act of 1875, granting right of way to railroad companies through the public lands of the United States.

3.    SAME—Cancellation of Entry—Effect on Right of Way—Case. Where A has a homestead entry upon a tract of government land subject to homestead entry, and B enters thereon while said entry is intact, and makes settlement, and a railroad company enters and appropriates a strip one hundred (100) feet wide across said tract for its right of way, having filed its articles of incorporation and profile maps with the secretary of the interior, and the same having received his approval under the act of 1899, providing for condemnation proceedings and payment; and thereafter B, by contest proceedings in the United States land office secures the relinquishment of A to be filed in the United States land office, and immediately thereafter makes homestead entry for said tract under a preference right as successful contestant, and complies with all the provisions of the law to preserve said entry, Held, that the cancellation of A's entry did not cause a reversion of the right of way to the railroad company under the act of 1875, granting right of way to railroad companies through the public lands of the United States.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before F. E. Gillette, Trial Judge.*

Affirmed.

*M. A. Low, Blake, Blake & Lowe,* and *W. C. Stevens,* for plaintiff in error.

*Black & Trosper,* for defendant in error.

STATEMENT OF FACTS.

On the 29th day of January, 1903, the defendant in error, James A. Kephart, brought this action in the district court of Comanche county to recover damages from the plaintiff in error, Enid & Anadarko Railway Company, a corporation, for the wrongful and unlawful invasion, appropriation and occupancy of a certain portion of his land for railroad purposes. The case was tried to the court upon an agreed statement of facts, resulting in a judgment for plaintiff in the sum of five hundred seventy-five dollars ($575.00), and defendant brings the case to this court, alleging error.

In his petition the plaintiff below alleged, substantially, that he is the homestead entryman, occupant and claimant for the northwest quarter of section ten (10), in township two (2), south of range eleven (11) W. I. M., in Comanche county, Oklahoma Territory, having made homestead entry No. 10,324 on the 31st day of July, 1902, at the United States Land Office at Lawton, Oklahoma; that he now resides thereon, and is in the lawful, exclusive, and peaceable possession thereof, save and except for the wrongful acts and trespasses of the defendant, plaintiff in error herein; that the defendant wrongfully and unlawfully entered upon said tract of land without the consent, and over the express objection, of plaintiff, and, by excavation and fill, constructed a railway embankment and grade, running and extending through and across said tract of land in a diagonal direction from the north to the south line thereof, and thereby occupied, and forcibly excluded plaintiff from a strip of valuable land one hundred (100) feet in width through and across the most valuable portion of said tract, to the damage of the plaintiff in the sum of nineteen hundred dollars ($1,900.00).

In the amended answer, relied upon by the defendant, and upon which the cause was submitted, the defendant admitted that it was a corporation, and, in addition to a general denial, alleged that on the 6th day of February, 1902, and prior to the date of plaintiff's homestead entry, and prior to his settlement upon the land, it filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organization under the same, and located its line of railway, and within twelve (12) months after making said location, and prior to the settlement and entry of plaintiff, caused to be filed with the register of the land office at Lawton, Oklahoma Territory, in the land district in which the land was situated, a map and profile of its road showing a section thereof thirty (30) miles in length, and as constructed and operated through said tract of land; that said map and profile was duly approved by the honorable secre-

tary of the interior in the month of February, 1902, and prior to said settlement and entry, and prior to the time that the rights of the plaintiff, if any, had been acquired or attached to said land, subject to the right of way of the railway company; that the defendant entered upon the tract of land, described in plaintiff's petition, and constructed a continuous line of railway grade and road through and across said land, and occupied, for railway purposes, a strip of land one hundred (100) feet in width through and across said tract; that the defendant completed its thirty (30) mile section of the road within one year after its said location; and that the land of the plaintiff at the time of the location of the defendant's railway line, and the filing of said maps and plats, was a part of the public lands of the United States.

Plaintiff replied denying each allegation of said answer not admitted by the petition or reply, and alleged that on the 3rd day of September, 1901, William Gillies made homestead entry for said land; that on or about February, 1902, and prior to the attempted occupancy and appropriation by the defendant, plaintiff made settlement on the tract of land to establish his residence thereon, and has resided on the land ever since, making it his home to the exclusion of any home elsewhere, with the intent to acquire title thereto under the homestead laws of the United States; that on March 4, 1902, plaintiff filed a contest against the entry of Gillies, charging speculation, and abandonment, which was the only valid pending contest against said entry at the time when Gillies filed his relinquishment; and that by virtue of such pending contest plaintiff acquired a preferred right to make homestead entry on said tract under the act of Congress, approved May 14, 1880, 21 Statutes 140, and under the rules and regulations and decisions of the department of the interior of the United States; and that on the 31st day of July, 1902, Gillies filed his relinquishment in the land office at Lawton, in and for the district in which said tract of land was located, and on the same day that plaintiff made his homestead entry for said tract.

The agreed statement of facts upon which the cause was submitted is as follows:

"It is hereby stipulated and agreed by and between the parties hereto that the following statement of facts shall be taken and considered upon the trial by the court as facts proven on the trial of the above entitled action, and the same are now hereby admitted to be true by the parties hereto, respectively, to-wit:

"First. That on the 3rd day of September, 1901, at the United States Land Office at Lawton, Oklahoma Territory, William Gillies made homestead entry under the homestead laws of the United States, of the northwest quarter ($\frac{1}{4}$) of section numbered (10), in township numbered two (2) south, of range numbered eleven (11) west of the Indian Meridian, in Comanche county, Oklahoma Territory, being the identical tract of land over which the right of way is in controversy in this section, and that from and after said September 3, 1901, said tract was so covered by the valid and subsisting homestead entry of said William Gillies up to the time that he relinquished on July 31, 1902.

"Second. That plaintiff Kephart made settlement and established his residence on said land on or about February 10, 1902, and has resided on said land ever since.

"Third. That plaintiff on March 4, 1902, filed a contest against said homestead entry of William Gillies, charging speculation and abandonment, which was the only valid pending contest against said entry at the time of the filing of Gillies' relinquishment.

"Fourth. That on July 31, 1902, relinquishment of said William Gillies for said claim was filed in the United States Land Office at Lawton, Oklahoma, and immediately thereafter, and on the same day plaintiff Kephart made homestead entry for the said land under a preference right as successful contestant, and has resided thereon as homestead claimant ever since.

"Fifth. That plaintiff has never made any conveyance or agreement for conveyance of any portion of said land to defendant, or for its use, and has never been paid or proffered payment for right of way over said tract by defendant.

"Sixth. That defendant is a corporation, as alleged in plaintiff's petition, and that it entered upon said tract of land and constructed over and across the same a continuous line of railroad grade and roadbed, and occupied for said purposes a

strip of land one hundred (100) feet in width through and across said tract of land.

"Seventh. That on the sixth day of February, 1902, and prior to said plaintiff's homestead entry described in his petition, and prior to his settlement upon the said land, defendant filed with the secretary of the interior a copy of its articles of incorporation and due proofs of its organization under the same, and on or before the 6th day of February, 1902, located its line as afterwards constructed and operated to, over and across the said lands, and within twelve months after making said location, and on the 27th day of February, 1902, caused to be filed with the register of the United States Land Office at Lawton, Oklahoma Territory, and of the land district in which said lands were situated, a map and profile of its said road showing a section of thirty (30) miles in length, running over and across the land herein described, and constructed and operated through and across said tract; that said map and profile were afterwards approved by the honorable secretary of the interior after July 31, 1902; that said defendant commenced the construction of said road across the said land on the —— day of February, 1902, and completed the said road within one year after the said location.

"It is further agreed between the parties hereto that if the rights of the plaintiff in and to the lands hereinabove described were prior and superior to the rights of the said defendant through, over and across the same, the said plaintiff is by virtue of that fact entitled to recover as the value of his interest in the lands taken, and as damages as to that portion of the said lands not taken for right of way of the said railway company to the sum and amount of five hundred seventy-five and 00-100 dollars ($575.00) and no more.

"And that in the event of final decision in favor of the said plaintiff, judgment shall be entered for the said plaintiff for said sum, provided, however, that nothing contained in this stipulation shall deprive either party of a right to do any act necessary to secure a review of the decision of the district court or any other court herein, on any question of law by any other court having competent jurisdiction.

"It is further stipulated and agreed that this cause shall be determined by the district court of Comanche county, Oklahoma

Territory, and a judgment rendered therein upon the foregoing statement of facts without other or additional evidence.

"In addition to the facts stated in the above statement, it was agreed by the plaintiff and defendant: That in the month of February, 1902, the defendant filed in the office of the secretary of the interior a true copy of the map and profile described in the said agreed statement, which map was certified by the president and chief engineer of the defendant, as follows:

" 'State of Illinois, County of Cook ss.

" 'W. E. Dauchy, being duly sworn, says that he is the chief engineer of the Enid and Anadarko Railway Company; that the survey of route of said road from a point on the line of the Chicago, Rock Island and Pacific Railway, forty-six (46) feet east and three hundred and thirty-eight (338) feet north of the southwest corner of section thirty-two (32), township two (2) north, range eleven (11) west of the Indian Meridian, and ending at a point one hundred fifty-five (155) feet east, and fifteen hundred eighty (1,580) feet north of the southwest corner of section six (6), township three (3) south, range ten (10) west of the Indian Meridian, in the territory of Oklahoma, a distance of twenty (20) miles, was made under his direction as chief engineer of the company and under its authority, commencing on the first day of September, 1901, and ending on the fifteenth day of December, 1901; and that such survey is accurately represented on this map.

" 'W. E. Dauchy, Chief Engineer.

" 'Sworn and subscribed to before me this 14th day of Jan. 1902.

" '[seal]        Frank Stewart, Notary Public.

" 'My commission expires Sept. 22, 1902.

" 'I, M. A. Low, do hereby certify that I am president of the Enid and Anadarko Railway Company; that W. E. Dauchy, who subscribed the foregoing affidavit, is the chief engineer of the said company; that the survey of line of route of the company's (road), as accurately represented on the accompanying map, was made under authority of the company; that the said line of route so surveyed and as represented on the said map was adopted by the company by resolution of its board of directors on the thirty-first day of December, 1901, as the definite location of its road from a point on the line of the Chicago, Rock Island and Pacific

Railway, forty-six (46) feet east, and three hundred thirty-eight (338) feet north of the southwest corner of section thirty-two (32), township two (2) north, range eleven (11) west of the Indian Meridian, and ending at a point one hundred fifty-five (155) feet east, and fifteen hundred eighty (1,580) feet north of the southwest corner of section six (6), township three (3) south, range ten (10) west of the Indian Meridian, in the territory of Oklahoma, a distance of twenty (20) miles; that the map has been prepared to be filed for the approval of the secretary of the interior, in order that the company may obtain the benefits of the act of congress approved March 2, 1899, entitled "An act to provide for the acquiring of rights of way by railroad companies through Indian reservations, Indian lands, and Indian allotments, and for other purposes." I further certify that the said railroad is to be operated as a common carrier of passengers and freight.

" 'M. A. Low,

" 'President of the Enid & Anadarko Railway Company.

" 'ATTEST: F. C. MARSHALL,

" '[SEAL]                    Secretary.'

"That said map and profile were approved by the said secretary through Thomas Ryan, acting secretary, in the following language endorsed thereon on the date borne by the same, to wit:

" 'Dept. of the Interior, February 6, 1902.

" 'Approved, subject to the provisions of the act of March 2, 1899 (30 Stat. 990), and subject also to any prior, valid, existing rights and adverse claims.

" 'THOS. RYAN, Acting Secretary.'

"It is also agreed that the railway line through, over and across the described land was constructed under contract by a contractor from the said company, who in turn employed subcontractors to grade the same, and they in doing such grading placed some earth excavated on said line more than fifty feet from the center line of said railway as located and constructed.

"That previous to July 31, 1903, defendant through its agent had conversation and negotiations with plaintiff as contestant on said land, and with his attorney, for the purpose of right of way through said land; but that defendant hesitated to make purchase and payment, and declined to do so because of the unsettled condition of the title, there being several contests and adverse claims to said land."

Opinion of the court by

GARBER, J.: From the agreed statement of facts in this case it appears that one William Gillies, on the 3rd day of September, 1901, made a valid homestead entry on the northwest quarter of section ten (10), in township two (2), south of range eleven (11), W. I. M., in Comanche county, Oklahoma Territory, being the tract of land in controversy in this action; that from and after said date said tract of land was covered by the homestead entry up to, and including, the 31st day of July, 1902; that the plaintiff, Kephart, made actual settlement and established his residence on said land on the 10th day of February, 1902, and has since resided thereon; that on March 4, 1902, he filed a contest against the homestead entry of Gillies, which contest was pending in the United States land office on the 31st day of July, 1902; that on that date, the said Gillies, as the result of said contest, relinquished his homestead entry, and thereupon the plaintiff, Kephart, immediately made his homestead filing thereon under a preference right as successful contestant; that the plaintiff, Kephart, never made any conveyance to, or any agreement for a conveyance of any portion of said land to the defendant company, and has never been paid for the right of way over the same; that the defendant company entered upon said land and constructed its grade and roadbed, and has occupied the same for the purposes of its railroad on a strip one hundred (100) feet in width through and across said tract; that it filed with the secretary of the interior a copy of its articles of incorporation on the 6th day of February, 1902; that on that date had located its line as afterwards constructed over and across said land, and on the 27th day of February, 1902, caused to be filed with the register of the United States land office at Lawton, Oklahoma Territory, the same being the land district in which said tract is situate, a map and profile of its said road running over and across the land described therein; that the said map and profile were approved by the secretary

of the interior on February 6, 1902, and the defendant commenced the construction of its road across said land sometime during the month of February, 1902, and completed the same within one year thereafter.

In this case we do not hesitate to approve the reasoning and conclusion expressed in the written opinion of the learned trial judge as a conclusive exposition and a correct statement of the law in the case, and which in our judgment remains wholly unanswered by the exhaustive briefs of counsel for plaintiff in error.

Plaintiff in error relies upon the act of March 3, 1875, 18 U. S. Stat. 482, c. 152, which provides:

"That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the congress of the United States, which shall have filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road. Also the right to take from the public lands adjacent to the line of said road material, earth and stone, and timber necessary for the construction of such railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed in amount twenty acres for each station to the extent of each station for each ten miles of its road."

"Sec. 4. That any railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and if upon unsurveyed lands within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located, a profile of its road, and upon approval thereof by the secretary of the interior, the same shall be noted upon the plats in said office, and thereafter all such lands over which right of way shall pass shall be disposed of subject to such right of way, provided that if any section of said road shall not be completed within five years after the location of said section, the

rights herein granted shall be forfeited as to any such completed section of said road."

The line of definite location of the railroad which determines the rights of the company to the right of way under the above act is definitely fixed within the meaning of the act by the filing of a profile map, showing its location, with the secretary of the interior, and upon his approval the public land over which such right of way shall pass shall be disposed of subject to such right of way. And it is held that the construction of the company's roadbed is sufficient notice, to those who take subsequently, that the company has taken its right of way under the act.

The act of 1875 grants the right of way to railroad companies only through the public lands of the United States. Was the tract in question public land at the time of the approval of the company's profile plat by the secretary of the interior, viz., February 6, 1902? The authorities without conflict determine that question in the negative. The homestead entry made by Gillies on September 3, 1901, segregated the tract from the public domain, and the company obtained no right under the act by filing its profile plat, or by its occupancy, for the reason that it was not public land at the time. And for the same reason the plaintiff, Kephart, secured no right to the tract by his settlement. In fact, both were mere trespassers upon the land, and remained such until the cancellation of the homestead entry of Gillies on July 31, 1902.

It is insisted by counsel for the plaintiff in error that, since the plaintiff alleges that he contested Gillies on the ground of abandonment and speculation, the court should take judicial notice of the fact that plaintiff could only contest Gillies by filing an affidavit showing that he had abandoned the land, and if, as a matter of fact, the land had been abandoned by Gillies, he had no claim upon the railroad company, and the land had, by such abandonment become subjected to the company's rights without compensation to him. That homestead entry, valid upon its face,

constitutes such an appropriation and withdrawal of the land as to segregate it from the public domain, and preclude it from subsequent homestead entry or settlement, or right of way, until the original entry is canceled or declared forfeited, is supported by all the authorities, and may now be regarded as one of the fundamental principles underlying the land system of this country. *Chotard v. Pope,* 12 Wheaton (U. S.) 586; *Wilcox v. Jackson,* 13 Peters (U. S.) 498; *Carroll v. Stafford,* 3 Howard (U. S.) 441; *Witherspoon v. Duncan,* 4 Wallace (U. S.) 210; *Pacific R. R. Co. v. Dunmeyer,* 113 U. S. 629; *Hastings & Dakota R. R. Co. v. Whitney,* 132 U. S. 357; *Sturr v. Beck,* 133 U. S. 541; *Sioux City & Iowa Falls v. Griffey,* 143 U. S. 40; *Whitney v. Taylor,* 158 U. S. 85; *McMichael v. Murphy,* 12 Okla. 155, 70 Pac. 189; *Hodges v. Colcord,* 12 Okla. 313, 70 Pac. 383; *Holt v. Murphy,* 15 Okla. 12, 79 Pac. 265.

The land department has repeatedly held that an entry segregates the land covered thereby, and so long as such entry exists it precludes any other disposition of the land. *Whitney v. Maxwell,* 2nd Land Dec. Dep. Int. 98; *Schrotberger v. Arnold,* 6th Land Dec. Dep. Int. 425; *Allen v. Curtis,* 7th Land Dec. Dep. Int. 44; *Faulkner v. Miller,* 16th Land Dec. Dep. Int. 130.

It is conceded by plaintiff in error that the location and construction of its road did not at the time of said location and construction create a right in the company which would prevent Gillies from securing just compensation for the appropriation of his land for the right of way had his inceptive right continued, but it is insisted that the land had always been a part of the public domain, subject, however, to the homestead rights of Gillies which had attached; that the cancellation of Gilles' entry was not needed to restore it to the public domain, but terminated the claim of Gillies, and, at the time of relinquishment, the company had filed with the secretary of the interior due proofs of the location of its line across the tract, together with a map and profile of the same, which map and profile were on file in the United States

land office at Lawton, the same being in the land district in which the said tract was located; that it had commenced the construction of its road, and, in short, had complied with all the provisions of the act to entitle it to take its right of way thereunder prior to the time that Kephart filed his contest, viz., March 4, 1902, and prior to the relinquishment of Gillies; and that by reason thereof the right of the company to the right of way attached prior to the rights of Kephart.

The law of the case will not warrant the conclusion. The land was not a part of the public domain at the time the company filed its profile map with the secretary of the interior and took possession of the land. That the company recognized this, and that it could not take its right of way under the act of 1875, is shown in the certificates of the president of the company, written upon the maps themselves, setting forth the purposes and object of their filing, and designating the act under which it sought to obtain benefits. The latter part of the certificate, stating the object and act under which the company proceeded, reads:

"This map has been prepared to be filed for the approval of the secretary of the interior in order that the company may obtain the benefits of the act of congress approved March 2, 1899, entitled 'An act to provide for the acquiring of rights of way by railroad companies through Indian reservations, Indian lands and Indian allotments, and for other purposes.'"

The approval of the acting secretary was made subject to the provisions of the act of 1899, and is as follows:

"Department of the Interior, February 6, 1902. Approved subject to the provisions of the act of March 2, 1899 (30 Stat. 990), and subject, also, to any prior valid existing right and adverse claims.        Thomas Ryan, Acting Secretary."

The act of 1899, referred to, required condemnation proceedings and payment for right of way, and it is admitted that the company paid neither Gillies nor Kephart. It is also admitted that, had the inceptive right of Gillies continued, the defendant company would have had no right to the land, not even a germ of

right that could possibly ripen into tangible fruition, without the relinquishment of the rights of Gillies; that it was a trespasser without legal excuse, and would have had to pay Gillies for its right of way; but, notwithstanding these admissions, it is insisted by the company, without blush or embarrassment, that it was upon the land in a receptive attitude, and when the rights of Gillies were terminated by the contest proceedings of Kephart, it received the benefits of the act of 1875 *eo instante* automatically, before Kephart could legally seize the fruits of his own efforts. It might be as consistently argued that Kephart was also upon the land in a receptive attitude. He was there before the company was, but the receptivity of the respective parties was impotent to create a right in either. Something had to be done to change the legal status of things; legal proceedings to be brought requiring aggresive actions as well as the assumption of the attitude of legal receptivity. The railroad company did nothing. Kephart assumed the aggressive. He acted; he instituted the only legal proceedings authorized by law to secure the cancellation of the homestead entry of Gillies.

The fourth clause of the agreed statement of facts reads:

"That on July 31, 1902, relinquishment of said William Gillies for said claim was filed in the United States land office at Lawton, Oklahoma, and immediately thereafter, and on the same day, plaintiff, Kephart, made homestead entry for the said land under a preference right as successful contestant, and has resided thereon as homestead claimant ever since."

In the case of *Hodges v. Colcord*, 12 Okla. 313, 70 Pac. 383, the supreme court of this territory said:

"The filing of Gayman, being regular and valid upon its face until canceled in a proper proceeding and by a proper authority, segregated the land from the public domain. Therefore the settlement of Hodges could avail him nothing until the filing of Gayman was canceled, and the only way to cancel Gayman's entry was by proper and authorized proceedings."

Section 2, 21 U. S. Stat. 141, entitled "An act for the relief

of settlers on public lands," and under which the plaintiff claims his right to recover in this action, reads:

"In all cases where any person has contested, paid the land office fees, and procured the cancellation of any pre-emption, homestead, or timber culture entry, he shall be notified by the register of the land office of the district in which such land is situated, of such cancellation, and shall be allowed 30 days from date of such notice to enter said lands."

Kephart began the proper aand authorized proceedings, which resulted in the termination of the rights of Gillies and a preference right to himself as a successful contestant. Should he now be required to surrender his preference right which the law gives him, or any portion of it, to the railroad company?

Why should the rights of the company be superior to those of Kephart? It represented to the land department and the public that it would pay for the land under the provisions of the act of 1899, and after occupancy and possession, and the successful contest of Kephart, it now claims a portion of the fruits of Kephart's victory under the act of 1875. It was a trespasser and wrongdoer *ab initio,* and shall it now be permitted to profit by its own wrong, and reap where it has not sown? Of what value to Kephart is the preference right of making his homestead filing upon the land, if by reason of his successful contest he finds the land, or a valuable interest therein, has passed *ipso facto* to the railroad company? Should he not be permitted to enjoy the fruits of his victory?

This whole subject has been carefully considered and appropriately discussed by Mr. Justice Miller in his opinion in the case of *Kansas Pacific Railway Company v. Dunmeyer,* 113 U. S. 629, wherein he says:

"It is argued by the company that, although Miller's homestead entry had attached to the land, within the meaning of the excepting clause of the grant, before the line of definite location was filed by it, yet when Miller abandoned his claim, so that it no longer existed, the exception no longer operated, and the land reverted to the company—that the grant by its inherent force reasserted itself and extended to or covered the land as though it had

never been within the exception. We are unable to pecreive the force of this proposition. When the line was fixed, which we have already said was by the act of filing the map of definite location, then the criterion was established by which the lands to which the road had a right were to be determined.

"No attempt has ever been made to include lands reserved to the United States, which reservation afterwards ceased to exist, within the grant, though this road and others with grants in similar language have more than once passed through military reservations for forts and other purposes, which had been given up or abandoned as such reservation, and were of great value. Nor is it understood that, in any case where lands had been otherwise disposed of, their reversion to the government brought them within the grant. Why should a different construction apply to lands to which a homestead or pre-emption right had attached? Did congress intend to say that the right of the company also attaches, and whichever proved to be the better right should obtain the land? The company had no absolute right until the road was built, or to that part of it which came through the land in question. The homestead man had five years of residence and cultivation to perform before his right became absolute. The pre-emptor had similar duties to perform in regard to cultivation, residence, etc., for a shorter period, and then payment of the price of the land. It is not conceivable that congress intended to place these parties as contestants for the land, with the right in each to require proof from the other of complete performance of its obligation. Least of all is it to be supposed that it was intended to raise up in antagonism to all the actual settlers on the soil whom it had invited to its occupation, this great corporation, with an interest to defeat their claims, and to come between them and the government as to the performance of their obligations.

"The reasonable purpose of the government undoubtedly is that which is expressed, namely, while we are giving liberally to the railroad company, we do not give any lands we have already sold, or to which, according to our laws, we have permitted a pre-emption or homestead right to attach. No right to such land passes by this grant. No interest in the railroad company attaches to this land, or to be founded on this statute."

If, as is said by Justice Miller, "no right to such land passes by this grant", how can it be claimed that a right of way stands

upon any higher or better ground? It is true that was a land grant case, but if the grant of the whole of the land did not give the railroad company any right to the land, under like condition, why should the grant of merely the right of way inure to the benefit of the company to any greater extent?

In the case of *Hodges v. Colcord et al.*, 12 Okla. 313, 70 Pac. 383, it was held:

"Where A has a homestead filing upon a tract of government land that is subject to homestead entry, and B, while said homestead filing is intact, enters theron and makes settlement, and one day after the settlement of B, C files a contest, in the local land office, charging that A is disqualified to hold the land covered by his filing and from obtaining title thereto under the homestead laws by reason of having entered the territory during the prohibited period, and claims a preference right, and, subsequently, and while said contest is pending, A relinquishes his filing to the government, and the land department holds the relinquishment to be the result of the contest of C, *Held*: That the preference right of C is not defeated or impaired by the adverse settlement claim of B acquired subsequent to the entry of A."

If a private citizen cannot by his prior occupancy defeat the preference claim and right of the successful contestant, how can it be said that a railroad company should be permitted to do so?

The case of *Jamestown and Northern Railroad Company v. Jones*, 177 U. S. 125, cited and relied upon by defendant, determines only that the construction of the railroad is equivalent to the filing of its map and profile with the secretary of the interior, so far as notice to settlers upon land traversed by its roadbed are concerned. In this case the line of the railroad was located October 30, 1880, and the road was built in 1882. No homestead entry was made on the land until after the construction of the road, and the final proof of defendant in error, Jones, was not made until about ten years afterward when he procured the relinquishment of a homestead entry of one Ella Sharp, made March 7, 1883. It will be seen that neither the right of Jones as a homestead entry-

man nor any right he may have acquired through the relinquishment of Ella Sharp reached back to the date of the construction of the road, and the supreme court holds that the actual construction of the road was notice to the homestead entrymen, which precluded them from acquiring any title by homestead entry to the right of way occupied by the railroad company. The decision in that case does not take into consideration two pre-emption contests made on the land prior to the construction of the road, probably because the defendant in error, when he made final proof, was not a successor in interest to either of them, and the right of such pre-emption entrymen had expired under his homestead entry. Under these circumstances the determination of the supreme court that the railroad company's title to its right of way was superior to the title of Jones under his homestead entry, is not an authority applicable to the facts of the case under consideration.

The case of *Bonner v. Rio Grande R. R. Co.* (Colo.) 72 Pac. 1065, has no application to the facts in the case at bar, for the reason that the original locators of the mining claim had granted to the railroad a right of way across the claim, and afterwards, abandoned the claim. The case only determines that after the abandonment, and after the construction of the railroad, a relocation of the claim was subject to the railroad easement. There was no contest in reference to the mining claim, but, if there had been, it could have made no difference with the result because of the grant of the right of way by the original locators, and because there is no provision of law granting the preference right to the successful contestant of a mining claim over any other occupant of the land.

In the case of *Alexander v. K. C., Ft. Smith & Memphis Company,* 138 Mo. 464, 40 S. W. 104, the right of way had been purchased from Simpson:

"The defendant company acquired a right of way of Simpson. and entered and built its road; but Simpson never perfected his title to the homestead, and never obtained his patent, but abandon-

ed the land, according to the weight of the evidence, sometime in 1882, after the company had built its railroad and was operating it as a part of a great interstate system between Kansas City and Birmingham, Alabama. The map showed that the railroad was located over the land in controversy, and plaintiff had been on the land, employed and aided in building defendant's railroad thereon. He, of all men, could not be ignorant of the location of the road and the claim of defendant. After Simpson's homestead entry was canceled in March, 1884, this plaintiff made a homestead entry of this land with full knowledge of the construction and operation of the railroad theron."

The case of *Kinion v. K. C., F. S. & M. R. R. Co.,* 118 Mo. 577, 24 S. W. 636, is not applicable to the case at bar, for the reason that the court expressly found that:

" * * * It is an undisputed fact that plaintiff knew the road had been located across this land, the right of way acquired, and the work of the construction of the road commenced, when he made his homestead entry. He therefore made his entry subject to all of the rights of the company."

In the case of *Roberts v. Northern Pacific Railroad Company,* 158 U. S. 9, the company acquired title by purchase, and expended large sums of money upon the land. The court held:

"The railroad company having acquired title from the owner, a subsequent purchaser from the owner, long after the company had entered upon visible and notorious possession under a valid contract, for a valuable consideration, could not maintain either trespass or ejectment; nor would he, as such purchaser, be entitled to recover damage for the occupation of the land, because, under the present claim, the benefit would go to a private party who bought with the knowledge of the county's previous sale, and who admits that he secured his own grant for a grossly inadequate consideration because of the fact of such previous sale."

A careful examination of the authorities cited discloses material and controlling facts in each case which do not exist in the case at bar. As the successful contestant, Kephart, secured a preference right to the land, and his admitted compliance with all the requirements of the law to preserve that right, precludes the com-

pany from taking its right of way under the act of 1875; and it must now respond in damages to the plaintiff.

For the reasons above stated, the judgment of the district court will, therefore, be affirmed.

Gillette, J., having presided in the court below, not sitting; Burford, C. J., Burwell and Pancoast, J J., dissenting; all the other Justices concurring.