DAVID BUSH, PLAINTIFF IN ERROR, *v.* JAMES I. PERSON, AD-MINISTRATOR DE BONIS NON, OF MABORN COOPER, DECEASED.

Where a person mortgaged land, which was at the time subject to a judgment lien, the deed containing what was equivalent to a covenant of warranty; then took the benefit of the bankrupt act of 1841; and then purchased the property which was sold under the judgment lien, he is estopped by his covenant from setting up his after-acquired title to defeat the mortgage.

The bankrupt act does not annul a covenant in such a case.

THIS case was brought up from the high court of errors and appeals of the State of Mississippi, by a writ of error issued under the 25th section of the judiciary act.

The case is stated in the opinion of the court.

It was argued by *Mr. Bayard,* for the plaintiff in error, and *Mr. Crittenden,* for the defendant.

*Mr. Bayard* explained the doctrine of estoppel at common law, and referred to Williams *v.* Saunders, 80, note. But where there is no covenant of warranty there is no estoppel, 11 How. 298; and in this case there was none. The law of the State implies such a covenant from a deed of bargain and sale, but not as between mortgagor and mortgagee.

*Mr. Crittenden* contended that the second section of the bankrupt act excepted mortgages and other securities for debt. It says that mortgages must remain unimpaired, but if Bush is allowed to hold, the mortgage certainly is impaired.

Mr. Justice CURTIS delivered the opinion of the court.

A bill to foreclose a mortgage on a lot of land in Mississippi was filed by the administrator of the assignee of the mortgage, in the superior court of chancery in that State. The complainant obtained a decree of foreclosure, and the respondent appealed to the high court of errors and appeals, where the decree of the superior court of chancery was affirmed. The appellant then prosecuted the writ of error, which brings the case before this court.

The case was, shortly, this: The appellant was one of two mortgagors. When the mortgage was executed, the land was encumbered by a lien from a judgment previously recovered against the mortgagors.

After executing the mortgage. the appellant became a bankrupt, under the act of congress of August 19, 1841, 5 Stats. at Large, 440, and received his discharge. The land was exposed to sale to satisfy the judgment lien, and the appellant, after his

discharge, purchased it. The court of appeals of Mississippi decided:—

1. That though the deed of mortgage contained no express covenant of warranty, the words "grant, bargain and sell," which were in the deed, under the law of that State, imported covenants of warranty of title, and against encumbrances, and for quiet enjoyment, as effectually as though such covenants had been expressly set out in the deed.

2. That, under the law of Mississippi, if there had been no discharge in bankruptcy, the appellant would be estopped by his covenants from setting up his after-acquired title to defeat the mortgage.

3. That the discharge in bankruptcy did not enable him to do so.

This last position is the only one reëxaminable here; the decision by the state court, of all matters depending exclusively upon the law of the State, being conclusive, on a writ of error, under the 25th section of the judiciary act of 1789.

The question for our consideration is, what effect the discharge of a bankrupt has upon estoppels, arising by law from covenants of warranty contained in his deeds of conveyance of land.

To determine this, it is necessary to have in view the different modes of operation of such covenants. They are contracts, and an action lies for recovery of the damages sustained by their breach. At law, they run with the land; and if the covenantor subsequently acquire an outstanding paramount title, it enures by force of the covenant to him who claims under the deed of the covenantor. This rule is now established in the law of this country, and has been affirmed in numerous decisions in this and other courts. Many of them may be found collected in a note to 2 Smith's Leading Cases, 545, &c.

In equity, the covenantor is treated as estopped by his covenant, to assert that any outstanding title existed inconsistent with what he undertook to sell and convey.

The argument on the part of the appellant is, that, under the 4th section of the bankrupt act, he was discharged from all debts, contracts, and other engagements provable under the act; that not only the debt secured by this mortgage, but the covenant of warranty itself, was provable under the act. And, consequently, the covenantor, being released from the covenant, it could no longer have the operation allowed to it by the courts of Mississippi.

It must be admitted, that if the covenantee or his assignee had released the covenant, it would be difficult to maintain that it could continue in existence for any purpose. But it must be considered, that whatever discharge has taken place in this case,

is by force of a statute, which may have so qualified and limited its effect as still to leave the covenant in existence for one purpose, though not for others; and that the question, whether it has done so, can be determined only by examining the act, and ascertaining the will of the legislature in this particular.

The second section of the act contains this proviso: "That nothing in this act contained shall be construed to annul, destroy, or impair any lawful rights of married women, or minors, or any liens, mortgages, or other securities on property, real or personal, which may be valid by the laws of the States respectively, and which are not inconsistent with the provisions of the second and fifth sections of this act." There does not appear to have been anything in this mortgage inconsistent with those sections; and it is not denied that the mortgage itself, considered simply as a conveyance of the land, remained unaffected by the act.

It is therefore obvious, that though the bankrupt, personally, was released by the act, the debt due from the land continued undischarged. In this particular, beyond all doubt, the discharge by the act differs from a release by the creditor; since, if the latter had released the debtor, the mortgage would thereby have been satisfied, and the charge on the land destroyed.

The intention of the legislature to carry out this distinction between the personal liability of the debtor and the liability of the land, and to preserve the latter in full force, unaffected by the discharge of the debtor, is clearly declared by the act. The act says, in so many words, that a mortgage, valid by the law of the State, shall not be impaired by any thing in the act.

We think there is sufficient reason why this proviso should be so construed as completely to save the effect and operation of all estoppels running with the land and operating at law to pass the legal title, or in equity to conclude the grantor from asserting the existence of a title inconsistent with what he undertook to sell and convey. The purpose of the legislature to afford complete and effectual protection to mortgage titles, against any thing which was to be done under the act, and the broad and strong terms in which this purpose is expressed, require us to say, that the debtor cannot derive from the act an enabling power to do or assert any thing which will impair a mortgage otherwise valid. Nor is there any incongruity with established principles, in holding that the personal discharge of the debtor does not free him from the estoppel.

If this obligation could rest solely upon a covenant, effectual in law to charge the grantor in a personal action, it would follow, that when such personal liability was released by the bankrupt act, the estoppel would naturally fall with it; and that an

intention to preserve the estoppel ought to be clearly indicated, to induce the court to say it was not destroyed; but such estoppels do not depend on personal liability for damages. This is apparent, when we remember that estoppels bind, not only parties, but privies in blood and estate, though not personally liable on the covenants creating the estoppel. See Carver v. Jackson, 4 Pet. 85, 87; White v. Patten, 24 Pick. 324; Mark v. Willard, 13 New Hamp. R. 389; Baxter v. Bradbury, 20 Maine R. 260.

Indeed, it is the settled doctrine of this court, not only that no existing personal liability is necessary to work an estoppel, but that none need have existed at any time. In Van Rensalaer v. Kearney et al. 11 How. 322, it was held, after great consideration and a full examination of the authorities, that "if a deed bear on its face evidence that the grantors intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties; then, although it may not contain any covenants of title, in the technical sense of the term, still, the legal operation and effect of the instrument will be as binding on the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted; at least, so far as to estop them from ever afterwards denying that he was seized of the particular estate at the time of the conveyance."

It is familiar law, also, which was applied in Carver v. Jackson, 4 Pet. 86, 88, that a mere recital of a fact in a deed is as effectual an estoppel as a covenant. There is no necessary connection, therefore, between the personal liability of the debtor on his covenant, and the estoppel which arises therefrom; and it is not an incongruity for the legislature to preserve the latter while they discharge the former.

Estoppels which run with the land and work thereon are not mere conclusions; they pass estates, and constitute titles; they are muniments of title, assuring it to the purchaser. Their operation is highly beneficial, tending to produce security of titles; and if a discharge under the bankrupt law were allowed to destroy this mode of assurance, it would in an important particular impair the operation of deeds containing it. This, by the express words of the bankrupt law, is prohibited.

In Stewart v. Anderson, 10 Alabama R. 504, the supreme court of Alabama had this precise question before them, and held the bankrupt estopped. A similar decision was made by the court of appeals of Maryland in reference to the effect of a discharge under the insolvent law of that State. Dorsey v. Gasaway, 2 H. and J. 411.

Our opinion is, that the decree of the high court of errors and appeals of Mississippi should be affirmed, with costs.