## WILLIAM GOURLEY v. GEORGE W. COUNTRYMAN.

### (Filed February 13, 1907.)

1. **PUBLIC LANDS—Patent—Trust Declared, When.** Where the land department has, by reason of error of law, issued a patent for public land to one person when, if the law had been correctly stated and applied, such land would have been awarded to another person, a court of equity w.. on proper application and showing declare the patentee a trustee of said land for the benefit of the person lawfully entitled to the title, and will decree a conveyance.

2. **SAME—Finding of Land Department.** Where a person purchases and obtains the relinquishment of a homestead entryman and while in possession of and controlling such relinquishment files a contest against the entryman, alleging that the entryman has relinquished and abandoned the land, and before the filing of such relinquishment a third person and junior contestant files a contest against the entryman and senior contestant alleging fraud and speculation, a court of equity will not disturb a finding of the land department that the senior contestant is not acting in good faith and is not entitled to a preference right in the cancellation of the first entry.

3. **SAME—Trespassers.** One who settles upon public land covered by a valid homestead entry is a mere trespasser and acquires no rights as a settler against a contestant who secures the cancellation of the first entry and is awarded the preference right to enter the land.

4. **SAME—Same—Homestead Entry.** While one who settles upon segregated land embraced in a homestead entry, cannot acquire any rights as a settler thereby, yet upon the relinquishment of the entryman, there being no intervening superior rights attached, the rights of the settler attached eo instanti, and if qualified, he is entitled to the homestead entry if he applies within ninety days from the time his rights attach.

5. **SAME—Patent—Title to land.** A receiver's final certificate issued under the homestead law conveys the equitable title to the person named in the certificate, subject to be defeated by cancellation for fraud in procuring same. The legal title remains in the United States until patent issues and is conveyed by the patent

to the patentee, and relates back to the inception of the rights of the patentee. Such certificate does not convey a fee simple title.

6. SAME—Same. One holding land by virtue of a receiver's final certificate prior to issue of patent is not seized in fee simple of the land described in such certificate and is not, on account thereof, prohibited from entering public lands in Oklahoma under sec. 20 of the act of May 2, 1890, 26 Stat. 81.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*J. H. Everest,* for plaintiff in error·

*J. L. Brown* and *Selwyn Douglas,* for defendant in error.

Opinion of the court by

Burford, C. J.:   This is a suit in equity to have a resulting trust declared.   The defendant in error, Countryman, holds the patent from the United States to eighty acres of land located in Oklahoma county, Oklahoma, more particularly described as the north 1-2 of the northeast 1-4 of section 28, township 11 north, range 3 W. I. M., and the plaintiff claims that in the determination of the several claims to said land before the land department of the United States, prior to issue of patent, the law was improperly decided against him and in favor of Countryman, whereby the land was improperly awarded and patented to Countryman when it should have been, upon the law and facts, awarded and patented to him.   The petition contains two causes of action. A demurrer was sustained to each cause of action upon the ground that neither of them alleged facts sufficient to constitute a cause of action.   Judgment was rendered for the defendant upon the demurrer, and the plaintiff appealed.

That a court of equity will declare the holder of the legal title of real estate derived directly from the United States to be a trustee for the person entitled under the law to have the same, and compel a conveyance from the trustee to the *cestui que trust,* upon proper application and showing, is no longer open to controversy. The record discloses that on May 11, 1889, A. G. Blaurelt made homestead entry for the tract of land here involved. October 17, 1889, Gourley filed contest against Blaurelt's entry, charging that he had relinquished his entry and abandoned the land. September 30, 1890, Thomas W. Pence filed a contest against Blaurelt's entry and made Gourley a party to the contest, in which he alleged that Blaurelt had relinquished the land to Gourley prior to the filing of Gourley's contest, and that Gourley was holding the relinquishment to suit his convenience for speculative and fraudulent purposes. On December 1, 1891, Gourley filed Blaurelt's relinquishment and made entry of the whole quarter section of which this tract formed a part. Upon the trial of the contest of Pence his contest was sustained, the entry of Gourley canceled to the tract in controversy, and Pence made homestead entry on February 14, 1895. On July 26, 1895, Pence relinquished and George W. Countryman made homestead entry. Gourley went into possession of the land immediately after he purchased Blaurelt's relinquishment and remained in possession until after these proceedings were all disposed of and the land patented to Countryman. On October 15, 1895, Gourley filed a contest against the entry of Countryman alleging settlement at the date of Coutryman's entry, and that Pence and Countryman were in collusion for the purpose of acquiring his improvements.

The first cause of action set forth in the petition is based upon the contention that Gourley being the senior contestant against Blaurelt and also a settler upon the land at the time Pence was allowed to make homestead entry, that the department erred in holding that he was not entitled to the entry at that time, and contends that he should have been entitled to file upon the land either as the successful contestant or as the prior settler.

By the final decision of the land department it was held that:

"A contestant who holds a relinquishment and brings a contest against the entry covered thereby, charging the fact of relinquishment, acquires no preferred right if he subsequently files said relinquishment and the entry is canceled; nor can he secure such right by settlement on the land prior to the cancellation of said entry."

· The land department found from the evidence in the contest case of Pence against Blaurelt and Gourley that Gourley became the owner of Blaurelt's relinquishment about the middle of October, 1889, and kept the same in his possession until December 21, 1891, when he filed the same and made homtstead entry of the land. That he filed a contest on October 17, 1889, while he had the relinquishment in his possession, in which he charged Blaurelt with having relinquished and abandoned the land. Upon the facts found, the secretary of the interior, Mr. Francis, in his final decision, held:

"The questions now at issue, are: First, whether the contest of Gourley gave him any rights to the land, and, secondly, did his settlement inure to any legal advantage to him. Upon the first question in the case of *Butman v. Born-*

*ster,* (13 L. D. 493), Assistant Secretary Chandler held, 'That a contestant who is in possession of a relinquishment, but for purposes of. delay and speculation brings a contest against the relinquished entry on the ground of relinquishment and abandonment and subsequently files said relinquishment, acquires no preference right on the cancellation of the entry. In the *ex parte* case of Eva Brown, (3 L. D. 150) it was held that: 'Where one purchases of a timber culture entryman his relinquishment, it may be made the basis of an entry by filing it with an application for the land, but it may not, by retaining it, become the basis of a contest by the purchaser.' The reason of this is apparent, inasmuch as the filing of a contest, where one holds in one's hands that which makes the contest unnecessary, is a nullity and ought not and does not confer any rights upon the contestant, for the reason that the contest is not made in good faith and is not for the purpose of securing the cancellation of the entry, as the relinquishment in his possession would, in itself if filed, secure that result."

It was further held that his settlement on the land was not in good faith, having been made while there was an entry of another upon the land; that he acquired no rights thereby, and that the preference right of Pence under the contest was superior to the settlement of Gourley made as a trespasser.

We think the conclusions reached by the secretary are sound, and the law as stated by him and applied to the case is not subject to serious criticism. Having found that the contest filed by Gourley against Blaurelt was not in good faith, that it was useless and abortive and not filed for the purpose of procuring a cancellation of the entry but for delay and speculation (and in the absence of the evidence we must assume that these conclusions are supported by the

evidence,) it would have been trifling with justice and making the courts a mere object of convenience to serve one's personal or private interests, to have permitted him to have obtained any superior rights by virtue of such a contest.

On the second question this court, in *Hodges v. Colcord,* 12 Okla. 313, 70 Pac. 383; held that where one made settlement upon a tract of land covered by a homestead entry, and subsequently a contest was filed by a third party and the entry canceled as a result of the contest, the preference right of the contestant was superior to the right of the settler. To the same effect is *McMichaels v. Murphy,* 12 Okla. 155, 70 Pac. 193. The settlement of Gourley upon the land while the entry of Blaurelt was intact gave him no rights as a settler and no rights as such could attach, until Blaurelt's entry was canceled. This entry was canceled on December 1, 1891. In the meantime, on September 30, 1890, Pence had filed the contest which gave him the preference right and which, upon cancellation of the entry, was superior to any rights acquired by Gourley as a trespasser. This question is expressly decided in *Reeves v. Oliver,* 3 Okla. 62, 41 Pac. 353. The demurrer to the first cause of action was properly sustained.

The second cause of action is based upon the theory that when Pence relinquished his entry and Countryman made homestead entry, Gourley was a settler upon the land and that his rights attached *eo instanti,* and were superior to those of Pence and that it was error in the land department to refuse his application for the land. Pence made homestead entry, as the result of his contest, on February 14, 1895; at that time Gourley was in possession of a portion

of the land but he was not permitted to file because his rights as a settler were inferior to the preference right of Pence. On July 26, 1895, Pence relinquished to Countryman, who made homestead entry of the tract. On October 15, 1895, Gourley filed a contest against the entry of Countryman, in which he alleged settlement upon the land dating from November, 1889, and that he was a resident upon the land at the date of Pence's relinquishment. The secretary of the interior in passing upon Gourley's right to be heard upon his contest, held that: "When Pence relinquished his entry the land was restored to the public domain and if Gourley was then residing upon the land his settlement right would attach *eo instanti* upon the filing of Pence's relinquishment and could not be defeated by Countryman's entry." The hearing was had upon Gourley's contest and the final decision of the secretary, addressed to the commissioner of the general land office and which is pleaded with the petition, recites:

"Such hearing was duly had and the register and receiver, December 20, 1897, found that Gourley was the owner of the S. E. 1-4 of sec. 8, 123, N. R. 62 W. in Brown county, South Dakota, on July 26, 1895, when Countryman made his entry, and recommended the dismissal of his contest. By your office decision Gourley was found not to be the owner of said S. E. 1-4, but that on October 15, 1895, the date of the contest, he was the owner of the N. W. 1-4 of the same section and disqualified by such ownership from sustaining his claim to the land in controversy.

"There was no evidence introduced sustaining the charge of conspiracy between Pence and Countryman.

"Gourley showed that since 1889 he had been in the occupation of the south half of this quarter section and about ten

acres of the north half and had some improvements on said north half.

"To show the disqualification of Gourley, Countryman offered in evidence a certified copy of a patent issued to Gourley, December 4, 1895, for the N. W. 1-4 of sec. 8, T. 123 N. R. 62 W. in South Dakota, containing one hundred and sixty acres of land; also copy of his final proof under the timber culture law for said land, submitted August 14, 1895; also a certified copy of a patent for the S. E. 1-4 of the same section, issued the 10th day of June, 1882, and containing one hundred and sixty acres of land. Gourley admits receiving the said patents, but claims to have sold the said S. E. 1-4 to Peter Worges, his wife's brother, within a day or two after making his final proof, August 14, 1895. Countryman claims that both these deeds were fraudulent, that the sales were without consideration and were made, not to transfer but to cover up the true ownership of the land.

"A great volume of testimony was introduced for the purpose of showing that these claimed transfers were mere pretexts, all of which in the opinion of this department was unnecessary in view of the admission of Gourley that he received final certificate for said N. W. 1-4 of sec. 8, in South Dakota, August 14, 1885. While he held that certificate he was the owner of one hundred and sixty acres of land, and was during that time disqualified from claiming the tract in dispute by settlement or otherwise.

"His contest is based upon his settlement prior to the entry of Countryman. Countryman's entry was made July 26, 1895 and was valid against all claims except the alleged prior settlement claim of Gourley. His entry was existing August 14, 1895, when Gourley became disqualified to make or maintain settlement by reason of his then ownership of one hundred and sixty acres of land in South Dakota.

"At the instant Gourley received his said final certificate, the superior right of Countryman attached by reason

of his entry, which was no longer assailed by the claim of a qualified settler.

"It is contended by counsel for Gourley that final certificate does not invest the holder with a fee simple title such as contemplated in sec. 20 of the act of May 2, 1890, (26 Stat. 81.) This contention cannot be sustained. At common law the owner in fee simple of land was such an owner as had full disposal of the title during his lifetime and upon whose death the absolute title descended to his heirs.

"That the holder of a final certificate may dispose of the land covered thereby, has been held so often by this department that a citation of authorities need not be made. See also *Myers v. Croft*, 13 Wall, 291. And that the ownership passes to his heirs at death is equally well settled."

Afterwards an application was made by Gourley to the department, requesting that in the exercise of its supervisory powers it reverse its decisions and reinstate his homestead entry to the tract in question. This application was overruled, and the department adhered to its former decision.

The contention of plaintiff in error is that the secretary of the interior committed error of law in holding that the holder of a final receiver's certificate for one hundred and sixty acres of public land, was disqualified from making a homestead entry. The denial of Gourley's contest and his application to have his original entry reinstated is based upon the fact that he admitted that on the day Countryman's entry was made he was the holder of the certificate in question, and if such certificate does not convey a title in fee simple as held by the secretary, then his decision is erroneous and the plaintiff in error was denied a substantial right by such error and misapplication of the law.

The facts found show that Pence relinquished his entry July 26, 1895, and Countryman filed his homestead entry the same day; Gourley was then a settler on the land and had been since November, 1889. Gourley filed his contest against Countryman October 15, 1895, alleging settlement on the land at the date of Countryman's entry. This was an attempt to enforce his settlement right within the 90 days allowed by law. It must be conceded that if he was not disqualified by being the owner in fee simple of one hundred and sixty acres of land on the 26th day of July, 1895, the date the entry of Pence was canceled and if he was not disqualified at any time from that date up to and including October 15, 1895, the date he filed his contest, which for this purpose may be treated as an application to enter the land, then the decision by the land department was wrong and he should, on a right decision, have been awarded the land.

It appears from the facts found by the secretary, (which must be conclusive here) that Gourley made final timber culture proof for the South Dakota tract of land on August 14, 1895, and that patent issued therefor on December 4, 1895. The statute which controls this proposition is a part of sec. 20, of the act of May 2, 1890, 26 Stat. at Large, 81— the act creating the Territory of Oklahoma, which provides:

"All persons who shall settle on land in said territory under the provisions of the homestead laws of the United States and of this act, shall be required to select the same in square form as nearly as may be; and no person who shall at the time be seized in fee simple of a hundred and sixty acres of land in any state or territory, shall hereafter be entitled to enter land in said Territory of Oklahoma." This

part of the section contains two independent provisions, one relating to "settlement" upon public lands, the other to the "entry" of public lands, and they do not necessarily relate to or modify each other. The term "settlement" as applied to the initiation of a right to public lands, and the term "entry," each have a well-defined and settled meaning, and were used advisedly and appropriately by the law-makers. He who settles on public land in this territory, under the provisions of the homestead law, shall select the same in square form, as nearly as may be; and he who is seized in fee simple of a hundred and sixty acres of land in any state or territory shall not be qualified to enter land in Oklahoma. It is contended that the words "at the time seized in fee simple" mean at the time of settlement. We do not agree with this contention. Clearly it was the purpose of congress to prohibit an owner of one hundred and sixty acres of land to make an entry of any public lands in this territory—the law so says—and there is nothing in the context that required us to interpret it differently. "At the time" as used in the statute means the time when application is made to enter the land. As to the effect this may have upon persons qualified to enter land at the time a settlement is made, and who may make settlement and afterwards become disqualified before an entry is made, is not for the courts to provide a remedy. This question is for congress and we need not take up time in discussing it. The prohibition contained in the statute applies only to persons who are the owners and seized in fee simple of one hundred and sixty acres of land at the time of the entry, or at the time application is made to enter. We cannot agree with the secretary of the interior as to the char-

acter of estate conveyed by a receiver's final certificate; his construction has no support in the text books or adjudications. Congress could not have used stronger or more expressive language than "seized in fee simple." It designates the highest character of estate known to the law, ancient or modern. The term has a settled and unquestioned meaning, it leaves no room for doubt or interpretation; it admits of no modification or qualification. It must have been used intelligently and advisedly; congress only intends to withhold the right to enter public lands from such otherwise qualified persons as were seized in fee simple of other lands to the extent of one hundred and sixty acres. Having used a term having a settled, known and fixed meaning and used it appropriately, it does not lie within the province of any court or officer to impute to the language a different meaning, or to congress a different purpose.

As to the character of an estate a receiver's final certificate conveys we are not left to speculation. The supreme court has repeatedly and in numerous cases held that an estate represented by such certificate prior to issue of patent, is an equitable estate; the holder of the certificate has an interest which he may sell, incumber or convey subject to the right of holder of the fee to defeat his title for fraud in procuring the entry or certificate. The United States holds the fee in trust until patent is issued, by which it is conveyed to the one to whom the receiver's certificate had issued.

The interest of the entryman may be defeated and the certificate canceled at any time before the patent is issued. The certificate does not convey the entire estate; it conveys a conditional estate, less than a fee, and an estate in lands

less than a fee has never been designated as a fee simple. The certificate held by Gourley to the Dakota land did not transfer the title to him from the United States; it provided him with *prima facie* evidence of an equitable claim upon the United States for a patent, and its use is subject to be destroyed by cancellation. It is true that when the patent does issue it relates back to the inception of the patentee so as to cut out all intervening claims, but until patent does issue the certificate carries with it to the purchaser the full equitable title, with all the benefits, immunities and burdens of ownership, except the right of the holder of the fee to cancel the certificate for fraud in procuring it to issue. *The Benson Mining and Smelting Co. v. The Alta Mining & Smelting Co.* 145 U. S. 428; *Corrall v. Safford,* 3 How. 441; *French v. Spencer,* 21 How. 228; *Witherspoon v. Duncan,* 4 Wall. 210; *Stark v. Starr,* 6 Wall. 402; *Wirth v· Branson,* 98 U. S. 118; *Deffenback v. Hawke,* 115 U. S. 392; *U. S. v. Detroit Timber and Lumber Co..* 200 U. S. 321; *Gorden v Northern Pacific R. R. Co.* 154 U· S. 288; *Michigan Land & Lumber Co. v. Rust,* 168 U. S. 589; *Guaranty Savings Bank v. Bladon,* 176 U. S. 448; *Landes v. Brant,* 10 How. 384; *Busbe v. Person,* 18 How. 82; *Myers v. Croft,* 13 Wall. 291; *Rogers Locomotive Works v. American Emigrant Co.* 164 U· S. 559; *Bagnell v. Broderick,* 13 Pet. 436; *Miller v. Kerr,* 7 Wheat. 1; *Slone v. U. S.* 2 Wall. 555; *Beley v. Naphtaly,* 169 U. S. 353; *Shaw v. Kellogg,* 170 U. S. 312; *Brown v. Hitchcock,* 173 U. S. 476; *Close v. Stuyvesant,* 5 L. R. A. 161. The foregoing authorities clearly establish the doctrine that a receiver's certificate conveys only an equitable estate; that until patent issues the fee remains in the United

States, from which it must necessarily follow that a holder of a certificate before issue of patent cannot be seized in fee simple of the land described in such certificate.

From the facts found by the secretary of the interior, as shown by the exhibits to the petition, Gourley did not secure his patent to the Dakota land until December 4, 1895, and whether his qualifications to enter the land relate to the date of Countryman's entry or the date of filing his contest against Countryman can make no difference, as he was not prohibited from entering the land at either date.

Upon the application for review it was claimed that the records of the land department show that the tract of Dakota land does not contain one hundred and sixty acres, and hence no disqualification did in fact exist. The secretary refused to reverse his former decision for the reason that the proof was not submitted on the trial of the contest in the land office. The plaintiff in error contends that the quantity of land in the tract being apparent from the public surveys in the office of the commissioner of the general land office, the officials were bound to take judicial notice of the surveys and measurements, and that he was not bound to offer proof of such fact. It is a general rule that things of which courts or judicial officers are required to take judicial notice need not be offered in evidence or proven on the trial. But as this question was first presented to the secretary upon the application of Gourley for the exercise of the supervisory powers of the department, (and we are not advised as to whether the rulings of the department in such cases are subject to review by courts of equity,) we shall express no opinion on the subject.

It follows from the foregoing that the district court erred in sustaining the demurrer to the second cause of action contained in the petition.

The judgment of the district court of Oklahoma county dismissing the cause, is reversed and cause remanded with directions to overrule the demurrer to the second cause of action at the costs of defendant in error.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.