## WALL et al. v. UTAH COPPER CO.

(Circuit Court of Appeals, Eighth Circuit. November 7, 1921.)

No. 5698.

Courts ⬡═363—Estoppel ⬡═37—Grantor of mining claims held by State Statute and estoppel precluded from asserting after-acquired title.

Under Comp. Laws Utah 1917, § 4879, providing that title acquired by a grantor after a conveyance by him in fee simple inures to his grantee, as well as by estoppel, a grantor of mining claims by the number and name given in their surveys, which contained plats designating their boundaries and area, *held* precluded from claiming any part of the ground so designated as included in an older claim which he afterwards acquired.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Suit in equity by Mary Frances Wall, administratrix, and others, against the Utah Copper Company. From the decree, complainants appeal. Affirmed.

William W. Ray, of Salt Lake City, Utah (Athol Rawlins, of Salt Lake City, Utah, on the brief), for appellants.

A. C. Ellis, Jr., of Salt Lake City, Utah (W. H. Dickson, of Salt Lake City, Utah, on the brief), for appellee.

Before CARLAND, Circuit Judge, and LEWIS and YOUMANS, District Judges.

LEWIS, District Judge. A mining claim was located by John Anderson in the West Mountain Mining District, Salt Lake County, Utah, as the Amanda Lode. It was later further designated as U. S. Lot No. 191 when surveyed for patent. That survey was made in 1879, and describes a rectangular parallelogram 1,480 feet long by 200 feet wide, lying easterly and westerly. It was not within the limits of public land surveys. The initial point of the survey, as shown by U. S. Deputy Mineral Surveyor's notes, was the center of an incline shaft on the claim, thence by two courses to the southeast corner of the claim, at which point the surveyor, according to a recitation in his notes, erected a mound of stones and set a pine post 4½'x4"x4", and by appropriate marks on the post designated and fixed it as Corner No. 1, tying it to a mahogany tree 4 inches in diameter which "bears S. E. 27 ft. distant," thence N. 10° 45' E. 200 ft. to the northeast corner, where he erected a mound of stones and set a like post and marked it as Corner No. 2 of the claim. This corner was not directly tied. Thence N. 79° 15' W. 1,480 ft. to the northwest corner of the claim, where he erected a mound of stones and set a like post and marked it as Corner No. 3 of the claim, and gave that corner three direct ties, thence S. 10° 45' W. 200 ft. to the southwest corner of the claim, where he erected a mound of stones and set a like post and marked it as Corner No. 4 of the claim. This corner was not directly

─────────────────────────────────────────────
⬡═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tied. Thence S. 79° 15′ E. 1,480 ft. to Corner No. 1. Points on the side-lines were tied to natural objects and monuments.

Mining operations about the southeast corner have caused a caving in so that the stake and mound of stones designated in the survey as Corner No. 1 were lost, and presumptively the mahogany tree to which it was tied went down also. U. S. Patent issued in 1880, conveying the claim to John Anderson, describing it as Amanda Lode Lot 191, and by metes and bounds. Thereafter title to it passed to Enos A. Wall, who brought this suit and died pending the cause, wherein he charged that defendant was and had been trespassing upon the claim through underground workings and had extracted and carried away ores of great value, for which he asked judgment, that defendant be enjoined from future trespasses and that his title to the claim be quieted in him.

After patent had issued for the Amanda a number of other mining claims were located nearby, and the four with which we are now concerned are the Emma, Sur. No. 3534, Emma No. 1, Sur. No. 3676, Charles Read, Sur. No. 3489, and Mattie, Sur. No. 4317, all of which overlap the Amanda, as shown by this diagram:

The Emma was surveyed for patent in 1897, the Emma No. 1 in 1898, and patents for both of them issued to one Quinn in 1899. The Charles Read was surveyed for patent in 1897, and patent for it issued to the original plaintiff Wall in 1899. The Mattie was surveyed for patent in 1900, Wall being the owner, but patent has not issued. Wall later became the owner of the two Emma claims, and conveyed them and the Charles Read and Mattie to the defendant, or (as to some of them) to its grantors. He had not acquired the Amanda claim prior to parting with title to the other four claims. The field notes of surveys of the Emma, Emma No. 1, and Charles Read place the southerly side-line and the easterly end line of the Amanda, as shown by the dotted line X Y Z on the diagram, within the outer boundaries of that

claim as asserted here by appellants; and the field notes of the Mattie survey represent the north side-line as having a course N. 81° 9′ W. instead of N. 79° 15′ W., thus making it parallel with the southerly side-line as shown by the dotted line. The patents for the three overlapping claims exclude in general terms, as is the uniform practice, the overlapped and previously granted ground within the Amanda thus: "Expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said mining claim or Lot 191," and they also give the area granted by each patent in the three overlapping claims, but do not specify the acreage in conflict between the Amanda and either of those claims. The field notes, however, on which the patents issued in each instance specify the acreage in conflict with the Amanda and each of those claims, and computation discloses in each instance that the area in conflict south and east of the dotted line was not accounted for by the surveyor as part of the Amanda claim but as free ground to be included as parts of said three claims for patent as such. It clearly appears from their patent surveys that the ground thus reported by them to be in conflict was north and west of the dotted line. We do not deem it important to determine the causes that led to the conclusion arrived at by the surveyors in making the patent surveys that the ground south and east of the dotted line was not within and a part of the Amanda claim. Mining engineers who testified did not agree as to the true location of Corner No. 2 of the Amanda. It was established that for many years there had been a mound of stones and a pine post 4″x4″ marked as Corner No. 2 of the Amanda at a point some distance westerly of the point shown on the diagram as Corner No. 2 of the Amanda, and some feet north of what is there shown as the Amanda northerly side-line. A corner post could not be found at the point shown as Corner No. 2 on the diagram. Maps of the district showing the location and shape of different claims and their relations to each other had been issued and sold to the public, representing the Amanda claim with side and end line as shown by the dotted line. Mining Engineers who made patent surveys for claims in the immediate locality of the Amanda, other than the three with which we are now concerned, were required to check the Amanda patent survey, and their testimony tends to support the conclusion that the dotted line constituted the southerly side-line and easterly end line of the Amanda. The area called for in the patents of the Emma, Emma No. 1 and Charles Read claims, respectively, requires the inclusion therewith of the ground lying southerly and easterly of the dotted line, and likewise the patent survey of the Mattie requires the inclusion of the small strip to the south of the dotted line in its acreage, to make them correspond with the total acreage designated as free and patentable ground. The same thing as to acreage in the patented claims appears in the field notes of those claims. Thus we have both field notes of the four patent surveys and acreage represented as patentable mutually supporting each other that the disputed territory was not a part of the Amanda claim. When Wall delivered his deeds conveying the Emma, Emma No. 1 and Charles Read claims to the defendant or

its grantors he delivered at the same time the three patents, and they each recite that "there have been deposited in the General Land Office of the United States the plat and field notes of survey" for the claim the patent conveyed. Those patents described the ground conveyed by giving in each instance the name of the claim and its survey lot number, and also by metes and bounds, i. e. their end and side-lines, as shown on the diagram and as given in the field notes, and designated the points of intersection with Amanda end and side-lines in accordance with the field notes. When Wall conveyed them he described them in his deed by the name of the claim and the U. S. survey number.

On the foregoing facts the court gave plaintiffs the relief sought as to all ground in conflict between the Amanda and the four other claims which lies north and west of the dotted line X Y Z, but held that as to the ground east and south of that line, marked as tracts A, B, C, D and E, the plaintiffs were not entitled to recover, resting its conclusion upon a Utah statute which reads thus:

"If any person shall hereafter convey any real estate by conveyance purporting to convey the same in fee simple absolute, and shall not at the time of such conveyance have the legal estate in such real estate, but shall afterwards acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, his heirs, successors, or assigns, and such conveyance shall be as valid as if such legal estate had been in the grantor at the time of the conveyance." Comp. Laws 1917, § 4879.

Obviously, we need not decide which patent passed title to the tracts in dispute. The patent surveys of the four claims represented the disputed tracts as being parts of them, and the patents that issued for three of them purported to convey four of the tracts as parts of the patented claim. "It is a familiar rule of law, that, where a plat is referred to in a deed as containing a description of land, the courses, distances, and other particulars appearing upon the plat are to be as much regarded, in ascertaining the true description of the land and the intent of the parties, as if they had been expressly enumerated in the deed." Jefferis v. Land Co., 134 U. S. 178, 194, 10 Sup. Ct. 518, 522 (33 L. Ed. 872); see also Chapman and Dewey v. Levee District, 232 U. S. 186, 197, 34 Sup. Ct. 297, 58 L. Ed. 564. Wall, when he executed and delivered his deeds to the four claims, described them by the names and numbers given to them in the United States mineral surveys for patents, which was a representation that the premises being conveyed by him were premises described in those surveys and patents. It is not questioned that his deeds, under the local statutory rule of construction, purported to convey title in fee simple absolute; and assuming now, without deciding, that the tracts in dispute were a part of the Amanda claim as patented, nevertheless when he thereafter acquired title to that claim the statute at once operated to immediately pass title in the disputed tracts to his grantees and their assigns.

Furthermore, the statute on after-acquired title aside, we are not convinced that the facts are insufficient to raise an estoppel. Van Rensselaer v. Kearney, 11 How. 297, 13 L. Ed. 703; Ryan v. U. S., 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447; Bush v. Person, 18 How. 82, 15 L. Ed. 273; Tucker v. Ferguson, 22 Wall. 527, 573, 22 L. Ed. 805;

Moore v. Crawford, 130 U. S. 122, 130, 9 Sup. Ct. 447, 32 L. Ed. 878; Hanrick v. Patrick, 119 U. S. 156, 7 Sup. Ct. 147, 30 L. Ed. 396; U. S. v. C. & O. Land Co., 148 U. S. 31, 45, 13 Sup. Ct. 458, 37 L. Ed. 354. Wall received a very large sum as consideration for the claims, his conveyance of the fee was an implied representation that he was seized and possessed of the estate which he conveyed, and had good right to make the conveyance. The facts debarred him and appellants to make claim to the tracts in dispute.

Affirmed.